**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

---

**RODERICK KEITH GRAY**                                              **PLAINTIFF**

**V.**                                                    **CASE NO. 3:11-CV-90**

**CITY OF BRUCE, MISSISSIPPI**                                       **DEFENDANTS**

---

<u>MEMORANDUM OPINION</u>

This cause comes before the court on Defendant City of Bruce, Mississippi's Motion for Summary Judgment [51] on Plaintiff Gray's Title VII race discrimination and retaliation claims. Gray opposes summary judgment. Having considered the evidence and parties' memoranda, the court determines that the motion is well taken and should be granted.

Roderick Gray, an African-American, obtained a B.S. degree in technical education from Alcorn State University in 1988. Gray holds dual certifications in Mississippi as a water and sewage technician. Every three years, he takes continuing education classes to maintain these certifications. The Bruce Public Works Department hired Gray for a manual labor position on August 1, 1991. At the time, Public Works was divided into two departments, the Water and Sewer Department and the Street Department. Each department had a different supervisor. The supervisor for the Water and Sewer department later left the City's employ, and the head of the Street Department, Larry Blackwelder, became the director of both departments.

While his initial duties included picking up fallen limbs, repairing water leaks and making road repairs, Mr. Gray subsequently obtained certification as a Sewage and Wastewater

Operator. Under this certification, Mr. Gray's duties included taking water samples from city wells and sending them to the Department of Health for testing. He also read water meters once a month. Having switched to water and sewage work, Mr. Gray stated that he incurred the jealousy of white employees because "they saw a black man doing certain jobs they wished they were doing." Mr. Gray did not supervise any other employees and generally kept to himself.

Public Works Director Larry Blackwelder retired on December 31, 2009. Prior to his retirement, Bruce's Board of Aldermen and Mayor began filling his position. Bruce has five aldermen – three Caucasian, two African-American. During a meeting on November 16, 2009, Mayor Robert Oakley presented the Aldermen with job descriptions for Mr. Blackwelder's position. These qualifications included: (1) someone who could generate revenue through grant writing, (2) experience with street construction and maintenance, (3) knowledge of water and waste water systems, and (4) ability to develop bid documents and prepare reports. The Aldermen also discussed the need for the new hire to be the zoning administrator. The Mayor told the Board at this meeting that they should "aim high" in filling the position. Mr. Gray testified to having no experience in zoning administration, grant writing, or in serving in a supervisory capacity.

A week later, the Board voted unanimously to authorize the Mayor to nationally advertise the Public Works Director position. The Board unanimously approved the proposed advertisement on December 22, 2009. Plaintiff Gray testified that the City did not do anything improper by advertising for the department head position, and that the decision to advertise was not racially motivated.

Bruce ultimately received over 60 applications from Mississippi, Tennessee, Florida, Texas, Illinois, Missouri, Ohio, South Carolina and Wyoming. In order to narrow the 60

applicants, the Board of Aldermen agreed to interview each Calhoun County applicant, of whom Mr. Gray was one, and reviewed each remaining candidate's application and voted for those candidates to whom an interview should be given. An applicant receiving at least three votes was granted an interview. 16 applicants were selected for interviews as a result of these efforts. Mr. Gray testified that he did not make a particularly good impression in his interview; nothing took place during his interview that he considered racially motivated; and the Board asked legitimate questions. He further testified that at no time throughout his employment and hiring process did any alderman or the Mayor make any racial comment.

The Board also selected Joe Moss, a white applicant, for an interview. At the time of Mr. Moss's application for the position, he had approximately 23 years of experience in the field of Public Works. He had also served as president of a national recycling program and held management positions in road construction and the tool industry. Moss had previously operated water and wastewater systems for cities and had served as a Public Works Director for a Florida city five times the size of Bruce. As Executive Director of the Broward County Solid Waste District in Florida, a department serving a population of 1.5 million people, he managed a $125 million budget and supervised approximately 115 employees. He was experienced in zoning as well as applying for and obtaining grants for public projects. Moss obtained a bachelor's degree in telecommunications and business management, an A.S. degree in water technology, and he completed three years in mechanical engineering.

The Board narrowed the pool of  interviewed applicants by having each alderman submit his top three candidates for the position. The Board unanimously selected Joe Moss as a top three pick. Three aldermen selected Mr. Gray and Stuart May as their other two top choices. The Board unanimously authorized the Mayor to begin salary negotiations with Joe Moss. At

first, Moss and the city could not come to a salary agreement. The Board then authorized the Mayor by an anonymous 3-2 vote to begin salary negotiations with Stuart May, who had an even more rigid salary demand than Mr. Moss. Prior to abandoning Mr. May as a potential candidate, Mr. Moss contacted the Mayor with a lower salary demand. The Mayor informed Moss that he would be unable to act without presenting Moss' new proposal to the Board. By a three-two vote along racial lines, the Board elected to re-enter negotiations with Mr. Moss. The Board unanimously approved Moss for the position. These negotiations constitute what Mr. Gray calls a "triple prima facie" case. Moss held the position for nearly a year and a half before submitting his resignation.

At a January 17, 2012 Board meeting, the Board discussed three options for filling the vacant position: (1) split the water/sewer and street components of Public Works into separate Departments, with an existing employee to head up each of the departments, (2) resume the Board's prior hiring process, and (3) to start the entire application process from the beginning. The following week, in an effort to hire more employees, the Board unanimously approved a plan to split Public Works into two departments as it had been when Gray was originally hired. The Mayor asked all current Public Works employees if any would be interested in one of the two department head positions. Gray applied for one of the positions and the Board of Aldermen, again acting unanimously, selected him to fill it May 1, 2012.

Mr. Gray filed a charge with the Equal Employment Opportunity Commission on August 5, 2010. Pursuant to an EEOC right to sue letter dated April 7, 2011, Mr. Gray brought this action against the City of Bruce, Mississippi on June 30, 2011, alleging racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981. Pursuant to 28 U.S.C. § 1331, this court has federal question jurisdiction over the action.

4

Defendant Bruce filed the instant motion for summary judgment. With regard to Gray's discrimination claim, Bruce argues that it hired a candidate for the Public Works position who was more qualified than Mr. Gray. Further, Bruce contends that Plaintiff Gray cannot show any evidence of pretext in the city's selection of Joe Moss as the more qualified candidate.

Mr. Gray opposes summary judgment. He argues that his prima facie evidence is enough to survive summary judgment. He points to evidence of a "triple prima facie" case. That is, Bruce preferred a white person over Mr. Gray three times when it negotiated first with Moss, second with May, and third with Moss again. During these negotiations, Alderman John Armstrong asked the Board of Aldermen why they did not ask Mr. Gray to accept the position. Alderman Armstrong was not given an answer. Additionally, Mr. Gray posits the rather novel argument that Bruce's national search in and of itself could be proof of discriminatory intent and that Mr. Gray's experience in large cities and complex systems is a disqualification for the City of Bruce position. Gray also points to testimony of Robert McClora, a Public Works employee, in which he alleges that Mr. Moss was not qualified and that Mr. Gray "showed him a lots [*sic*] of stuff, too, help him out."

Rule 56 permits summary judgment where the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 588 (5th Cir. 1995). When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and "refrain from making credibility determinations or weighing the evidence." *Coury v. Moss,* 529 F.3d 579, 584 (5th Cir. 2008). The nonmoving party cannot rely on metaphysical doubt, conclusive

5

allegations, or unsubstantiated assertions but rather must show that there is an actual controversy warranting trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).

The parties agree that Mr. Gray established a prima facie case of race discrimination and that the City of Bruce sufficiently advanced a legitimate non-discriminatory reason for its failure to promote Mr. Gray. See *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Therefore, to survive summary judgment, Mr. Gray must "offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed motive alternative)." *Rachid v. Jack In The Box, Inc.* 376 F.3d 305, 312 (5th. Cir. 2004). In *Reeves*, the Court stated that "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment… if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact…." *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 148 (U.S. 2000).

At the outset, the court notes that however intuitive Mr. Gray's allegations may be, surviving summary judgment in this case is a uniquely difficult task since the employer is a committee of biracial aldermen acting unanimously at every relevant juncture. Mr. Gray alleges, in essence, that an improper conspiracy existed among the Aldermen. Inherent in such a theory is the necessity of positing unsubstantiated assertions and conclusive allegations. For example,

Gray testified that the two African American aldermen did not vote for discriminatory or retaliatory reasons, but that the three white aldermen did.

> **Counsel**: Okay, so you're saying all three white alderman were trying to discriminate against you because you're black in making that vote?
> **Gray**: Yes.
> **Counsel:** What facts or evidence do you have to support the claim?
> **Gray**: Because of the history.
> **Counsel**: Specifically what evidence do you have? Tell me specifically why you believe that their vote was based on discriminatory motive toward you?
> **Gray**: Because the previous public works director, he was over the whole department. So why – I mean, why I wasn't qualified to be over the whole department? If it was good enough for him it should have been good enough for me.
> **Counsel**: Are you claiming that the city has no right to change how they do things?
> **Gray**: They did. But, I mean, I'm saying that it wasn't right. It was discrimination against me.
> **Counsel**: How do you know that?
> **Gray**: Because of the way they voted and the way they did.
>                             ***
> **Counsel:** Okay. So just because they voted against you it has to be racism?
> **Gray:** Yes
> **Counsel**: And you believe that?
> **Gray:** Yes, I do.

For purposes of this motion, the court disregards these conclusive allegations and unsubstantiated assertions in keeping with *Little*.

The court declines to infer pretext or an improper motive from a unanimous, biracial committee's personnel decisions absent some evidence of racial discrimination. The Fifth Circuit has held that where an unsuccessful employee is clearly better qualified than the successful applicant, pretext is established. *Price v. Federal Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). However, "Showing that two candidates are similarly qualified does not establish

pretext under this standard." *Id*. Having acknowledged his own failure to meet the preferred job qualifications as well as acknowledging Mr. Moss's extensive qualifications, Mr. Gray's sole basis for alleging that he should have been chosen over Mr. Moss is "[b]ecause Mr. Moss wasn't from here, because I was more experienced here in the City of Bruce." The court is unable to conclude that, having failed to meet a number of job qualifications, an applicant is more qualified by virtue of having more experience in a particular location. For this particular position, it is undisputed that Mr. Moss had the superior credentials between the two. Assuming, *arguendo*, that Mr. Gray's years of service in Bruce fortified his credentials, Mr. Gray still would have failed to meet the Board's preferred job qualifications that Mr. Moss clearly possessed. These facts do not suggest pretext or unlawful motive.

Turning now to Mr. Gray's "triple prima facie" evidence, Gray alleges that the Board preferred a white male three times when it elected to negotiate with Moss, then with Mr. May, and then with Mr. Moss again. Having failed to come to an agreement with the Board's second choice, Mr. May, the aldermen were divided along racial lines in electing to reenter negotiations with Mr. Moss instead of Mr. Gray. The Board ultimately approved Mr. Moss for the position, again acting unanimously. Gray cites *Reeves* for the proposition that the jury may rely on evidence supporting plaintiff's prima facie case. A jury certainly may do so if the evidence is sufficient to survive summary judgment. "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 149, 149. The

Court ultimately held that prima facie evidence coupled with sufficient evidence to reject the employer's explanation would permit a finding of liability. *Id.*

In this case, the court is not convinced that Mr. Gray's prima facie evidence is particularly strong. The decision to reinitiate negotiations with Mr. Moss, albeit divided along racial lines, is hardly controversial. The board unanimously sought to hire Mr. Moss initially. It stands to reason that the Board would also prefer Moss after he contacted the Mayor with a lowered salary position within the Board's budget. In light of the Board's subsequent unanimous vote to appoint Mr. Moss, an unlawful motive cannot reasonably be inferred from these negotiations. Further, Mr. Gray has offered no evidence from which a rational jury could reject Bruce's hiring decision. Therefore, the court finds that this "triple prima facie" evidence is no greater a showing than prima facie evidence. To survive summary judgment, Mr. Gray must present something more to meet his "ultimate burden of persuading the trier of fact that defendant intentionally discriminated." *Id.* at 143.

The court turns now to Gray's objections to the national search and Moss' qualifications. Mr. Gray questions why Bruce would need to conduct a national search for such a small town. The only relevant question for purposes of this motion is why Bruce would *not* want to conduct a national search. Gray has made no showing in this regard. A small town committee's choice to conduct a national search is not evidence of an improper motive absent some indication of discrimination. Similarly, Moss' superior qualifications are not a disqualification for the position absent a showing of an unlawful motive. The court declines to set any precedent that would allow Title VII litigation to dissuade sound, not to mention desirable, hiring practices of employers in selecting the most qualified candidate.

Similarly, the testimony of Robert McClora, a non-supervisory co-worker, does nothing to advance a finding of discrimination. "Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact." *Turner v. Baylor Richardson Medical Center* 476 F.3d 337, 346 (5th Cir. 2007). Mr. McClora's testimony that he observed Mr. Gray helping Mr. Moss on the job might be evidence of a regrettable employment decision, but it does not evince an unlawful decision at the time it was made. This court finds the relevant perspective to be that of the employer at the time of the employment decision, not that of a non-supervisory co-worker following the decision. See *Perez v. Texas Dept. of Criminal Justice, Institutional Div.* 395 F.3d 206, 210 (5th Cir. 2004); *Hill v. SeaBoard Coast Line R. Co.* 767 F.2d 771 (11th Cir. 1985). Accordingly, Mr. McClora's testimony is irrelevant to the issues of pretext and motive.

In conclusion, a unanimous biracial committee of aldermen executed the employment actions in question; Mr. Gray testified to having made a poor impression in his interview; the evidence demonstrates that Mr. Gray's credentials did not match the committee's preferred qualifications; and Mr. Gray testified that he never heard any discriminatory comments. The court has drawn all reasonable inferences in Mr. Gray's favor, but is simply unable to infer any discriminatory impact in the evidence he has presented. Gray's discrimination claim is due to be dismissed.

Turning now to Mr. Gray's retaliation claim, he argues that the City's decision to separate the two departments was an adverse employment action, the timing of which gives rise to an inference of retaliation. He also points to Alderman Parson's comment, "we don't need a person that's suing the town to lead the town," as evidence of retaliation. Bruce counters that

Mr. Gray has failed to show that the city took an adverse employment action and that there is no causal link between any protected activity and the alleged adverse employment action.

To support a retaliation claim under Title VII, Mr. Gray must show that he engaged in activity protected by Title VII, that a materially adverse employment action occurred, and that a causal link existed between the protected activity and the adverse action. *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 331 (5th Cir. 2009). The parties agree for purposes of this motion that Mr. Gray engaged in protected activity by filing a charge with the EEOC.

The Supreme Court has defined materially adverse as an employer's actions that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). For example, "a good way to discourage an employee from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable." *Id*. 71, 72. In the present case, the Board's unanimous decision to restore the department to its original twofold regime did not harm Mr. Gray. Rather, he applied for and received a promotion accompanied by a salary increase. The court is unaware of the circumstances under which such a promotion is harmful within the meaning of Title VII to the person being promoted. The court understands that this division of the department frustrated Gray's expectations of an even higher-salaried position, but an action that only upsets a sense of entitlement is not an action Title VII is equipped to redress without a showing that the plaintiff is reasonably entitled to such an expectation. Finding none, the court concludes that Gray has failed to demonstrate an adverse employment action and to establish a prima facie case of retaliation under Title VII. Therefore,

11

Alderman Parson's comment, though incriminating it may be, does not fill the gap in Gray's requisite prima facie showing.

In light of the foregoing, the court establishes this case as one of those cases "where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148. Here, the court has no evidence before it to reject Bruce's explanations of hiring the more qualified candidate and seeking to hire more employees. Thus, "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, [and]… the plaintiff created only a weak issue of fact." *Id.*

THEREFORE, the plaintiff has not created a genuine issue of material fact with regard to his Title VII claims. The defendant is entitled to judgment as a matter of law. Defendant City of Bruce's Motion for Summary Judgment [51] is GRANTED. Pursuant to Fed. R. Civ. P. 58, a separate judgment shall be entered this date.

SO ORDERED, this the 12th day of September, 2012.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**